IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

OHIO VALLEY ENVIRONMENTAL
COALITION, WEST VIRGINIA
HIGHLANDS CONSERVANCY and
SIERRA CLUB,

      Plaintiffs,

v.     CIVIL ACTION NO. 2:13-cv-5006

FOLA COAL COMPANY, LLC,

      Defendant.

### COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL PENALTIES

### INTRODUCTION

1. This is a citizen suit for declaratory and injunctive relief and civil penalties against Defendant Fola Coal Company, LLC ("Fola") for violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereinafter "the Clean Water Act" or "the CWA"), and the Surface Mining Control and Reclamation Act, 30 U.S.C. § 1201 et seq. (hereinafter "SMCRA") at its Surface Mine No. 3 in Clay and Nicholas Counties, West Virginia.

2. As detailed below, Plaintiffs allege that Fola has discharged and continues to discharge pollutants into waters of the United States in violation of Section 301 of the Clean Water Act, 33 U.S.C. § 1311, and of the conditions and limitations of its West Virginia/National Pollution Discharge Elimination System ("WV/NPDES") Permit WV1014005 issued pursuant to Section 402 of the Clean Water Act.

3. Plaintiffs further allege that Fola's discharges of unlawful quantities of pollutants into the waters adjacent to its Surface Mine No. 3 violate the performance standards under SMCRA and the terms and conditions of its surface mining permit.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), 33 U.S.C. § 1365 (CWA citizens' suit provision), and 30 U.S.C. § 1270 (SMCRA citizens' suit provision).

5. On December 7, 2012, Plaintiffs gave notice of the violations and its intent to file suit to the Defendant, the United States Environmental Protection Agency ("EPA"), the Office of Surface Mining, Reclamation, and Enforcement ("OSMRE"), and the West Virginia Department of Environmental Protection ("WVDEP"), as required by Section 505(b)(1)(A) of the CWA, 33 U.S.C. § 1365(b)(1)(A), and Section 520(b)(1)(A) of SMCRA, 30 U.S.C. § 1270(b)(1)A).

6. More than sixty days have passed since notice was served. EPA, OSMRE and/or WVDEP have not commenced or diligently prosecuted a civil or criminal action to redress the violations. Moreover, neither EPA nor WVDEP commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or a comparable state law to redress the violations prior to the issuance of the December 7, 2012 notice letter.

7. Venue in this District is proper pursuant to 33 U.S.C. § 1365(c)(1) because the source of the Clean Water Act violations are located in this District, and pursuant to 30 U.S.C. § 1270(c) because the coal mining operations complained of are located in this District.

## PARTIES

8. Fola is a West Virginia Limited Liability Company engaged in the business of mining coal.

9. Fola is a person within the meaning of Section 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5), and Section 701(19) of SMCRA, 30 U.S.C. § 1291(19).

10. At all relevant times, Fola has owned and operated Surface Mine No. 3 in Clay and Nicholas Counties, West Virginia, which is regulated by Surface Mining Permit S200995

and which discharges pollutants into Twentymile Creek and its tributaries, including Stillhouse Branch, subject to the effluent limitations of WV/NPDES Permit WV1014005.

11. Plaintiff Ohio Valley Environmental Coalition is a nonprofit organization incorporated in Ohio. Its principal place of business is in Huntington, West Virginia. It has approximately 1,500 members. Its mission is to organize and maintain a diverse grassroots organization dedicated to the improvement and preservation of the environment through education, grassroots organizing, coalition building, leadership development, and media outreach. The Coalition has focused on water quality issues and is a leading source of information about water pollution in West Virginia.

12. Plaintiff West Virginia Highlands Conservancy, Inc., is a nonprofit organization incorporated in West Virginia. It has approximately 1,700 members. It works for the conservation and wise management of West Virginia's natural resources.

13. Plaintiff The Sierra Club is a nonprofit corporation incorporated in California, with more than 600,000 members and supporters nationwide and approximately 1,900 members who reside in West Virginia and belong to its West Virginia Chapter. The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives. The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface waters in West Virginia.

14. Plaintiffs have members, including Cindy Rank and James Tawney, who use, enjoy, and benefit from the water quality in Twentymile Creek and its tributaries, including Stillhouse Branch, and the natural resources associated with those streams. They would like to recreate in areas downstream from the portion of the stream into which Fola's Surface Mine No.

3

3 discharges pollutants harmful to aquatic life, including total suspended solids, conductivity and sulfate. Excessive amounts of these pollutants degrade the water quality of the Twentymile Creek and its tributaries, make the water aesthetically unpleasant and environmentally undesirable, and impair its suitability for aquatic life. Because of this pollution, Plaintiffs' members refrain from and/or restrict their usage of Twentymile Creek, its tributaries, and its associated natural resources. As a result, the environmental, health, aesthetic, and recreational interests of these members are adversely affected by Fola's excessive discharges of these other pollutants into Twentymile Creek and its tributaries from its Surface Mine No. 3 in violation of its NPDES and SMCRA permits. If Fola's unlawful discharges ceased, the harm to the interests of Plaintiffs' members could be redressed. Injunctions and/or civil penalties would redress Plaintiffs' members' injuries by preventing and/or deterring future violations of Fola's permits.

15. At all relevant times, Plaintiffs were and are "persons" as that term is defined by the CWA, 33 U.S.C. § 1362(5), and SMCRA, 30 U.S.C. § 1291(19).

## STATUTORY AND REGULATORY FRAMEWORK

16. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a National Pollution Discharge Elimination System ("NPDES") Permit issued by the EPA or an authorized state pursuant to Section 402 of the CWA, 33 U.S.C. § 1342.

17. Section 402(a) of the CWA, 33 U.S.C. § 1342(a), provides that the permit issuing authority may issue a NPDES Permit that authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

18. Section 303(a) of the CWA, 33 U.S.C. § 1313(a), requires that states adopt

ambient water quality standards and establish water quality criteria for particular water bodies that will protect the designated uses of the water.

19. The Administrator of EPA authorized WVDEP, pursuant to Section 402(a)(2) of the Act, 33 U.S.C. § 1342(a)(2), to issue NPDES permits on May 10, 1982. 47 Fed. Reg. 22363. The applicable West Virginia law for issuing NPDES permits is the Water Pollution Control Act ("WPCA"), W.V. Code § 22-11-1, et seq.

20. Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf . . . against any person . . . who is alleged to be in violation of . . . an effluent standard or limitation under this chapter."

21. Section 505(f) of the CWA, 33 U.S.C. § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in Section 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311(a), of the CWA and "a permit or condition thereof issued" under Section 402, 33 U.S.C. § 1342, of the CWA.

22. In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant or defendants to comply with the CWA and to assess civil penalties under Section 309(d) of the CWA, 33 U.S.C. § 1365(d).

23. Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates Section 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

24. Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C § 2461 note, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701 note, the court may assess a civil penalty of $37,500 per day for each violation that occurred after January

12, 2009.   See 40 C.F.R. § 19.4.

25.     Under Section 505(d) of the CWA, 33 U.S.C § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

26.     Section 506 of SMCRA, 30 U.S.C. § 1256, prohibits any person from engaging in or carrying out surface coal mining operations without first obtaining a permit from OSMRE or from an approved state regulatory authority.

27.     At all relevant times, the State of West Virginia has administered an approved surface mining regulatory program under SMCRA.  See 30 C.F.R. § 948.10.

28.     Among the performance standards mandated by SMCRA and the West Virginia Surface Coal Mining and Reclamation Act ("WVSCMRA") is that "[d]ischarge from areas disturbed by . . . mining shall not violate effluent limitations or cause a violation of applicable water quality standards."  30 C.F.R. §§ 816.42 and 817.42; 38 C.S.R. § 2-14.5.b.

29.     The legislative rules promulgated under the WVSCMRA provide that, as a general condition of all surface mining permits issued under the WVSCMRA, the permittee must comply with all applicable performance standards.  38 C.S.R. § 2-3.33.c.

30.     Section 520(a) of SMCRA, 30 U.S.C. § 1270(a), authorizes any person adversely affected to bring an action in federal court to compel compliance with SMCRA against any "person who is alleged to be in violation of any rule, regulation, order or permit issued pursuant to [SMCRA]."

31.     Section 520(d) of SMCRA, 30 U.S.C. § 1270(d), authorizes the Court to award the costs of litigation, including attorney fees and expert witness fees, "to any party, whenever the court determines such an award is appropriate."

32.     WVDEP is the agency in the State of West Virginia that administers that State's

CWA and SMCRA programs, and issues WV/NPDES Permits and WVSCMRA Permits.

**FACTS**

33. On May 13, 1996, WVDEP issued West Virginia Surface Mining Permit S200995 to Fola for its 1619.36-acre Surface Mine No. 3 in Clay and Nicholas Counties, West Virginia. The permit was amended in 1999 and 2006 to add 35 acres and 87.7 acres, respectively, and renewed in 2001 and 2006, and is still in effect.

34. Fola's Surface Mine No. 3 is by far the predominant, if not the only, development activity in the Stillhouse Branch watershed. Fola built a large valley fill (Durable Rock Fill (DRF) No. 2) in that watershed which was projected in its mining application to contain 39.9 million cubic yards of material and eliminate 1.49 acres of flowing stream in the watershed. Fola also built sediment control pond No. 40 in Stillhouse Branch below this valley fill. Pond 40 receives drainage from a 481-acre drainage area filled by DRF No. 2 and covering almost all of the Stillhouse Branch watershed.

35. Pursuant to EPA's 1982 delegation of authority and the WPCA, WVDEP issued WV/NPDES permit WV1014005 to Fola on June 11, 1996 to regulate water pollution from its Surface Mine No. 3. On May 26, 2006 and September 8, 2009, WVDEP renewed this WV/NPDES permit.

36. Outfall 29 of Fola's WV/NPDES Permit WV1014005 discharges from Pond 40 into Stillhouse Branch just upstream from its confluence with Twentymile Creek. Fola's Surface Mine No. 3 is the only NPDES permittee discharging into Stillhouse Branch.

37. Part C of WV/NPDES Permit WV1014005 incorporates by reference 47 CSR § 30-5.1.f, which provides that: "The discharge or discharges covered by a WV/NPDES permit are to be of such quality so as not to cause violation of applicable water quality standards adopted by the Department of Environmental Protection, Title 47, Series 2."

38. WVDEP's narrative water quality standards prohibit discharges of "[m]aterials in concentrations which are harmful, hazardous or toxic to man, animal or aquatic life" or that cause "significant adverse impacts to the chemical, physical, hydrologic, or biological components of aquatic ecosystems." 47 C.S.R. §§ 2-3.2.e & 2-3.2.i.

*39.* In its 1996 Cumulative Hydrologic Impact Assessment prior to the issuance of Fola's permits for Surface Mine No. 3, WVDEP stated that "[t]he water quality data for Stillhouse Branch seems to represent completely undisturbed conditions." The upstream baseline water quality monitoring point in that branch showed sulfate concentrations of 1-18 mg/l and total dissolved solids concentrations of 3-49 mg/l. The downstream baseline water quality monitoring point in that branch showed sulfate concentrations of 4-22 mg/l and total dissolved solids concentrations of 10-98 mg/l. WVDEP concluded that "[t]he data for Stillhouse would appear to represent a stream in this area with no influence from coal mining."

40. In samples taken between July 1998 and June 2004, WVDEP measured the conductivity (in µS/cm) and sulfate levels (in mg/L) in Stillhouse Branch as follows:

| Date | Conductivity | Sulfate |
|---|---|---|
| 7/20/1998 | 511 | 200 |
| 8/5/2003 | 3794 | |
| 8/12/2003 | | 1756 |
| 8/12/2003 | 2776 | 1759 |
| 9/8/2003 | 2906 | 1814 |
| 9/30/2003 | 3588 | 2368 |
| 10/28/2003 | 3086 | 2055 |
| 11/10/2003 | 3169 | 2247 |
| 12/23/2003 | 3077 | 2143 |
| 1/26/2004 | 3620 | 2647 |
| 2/25/2004 | 3837 | 2824 |
| 3/19/2004 | 3284 | 2331 |
| 4/5/2004 | 2678 | 1673 |
| 5/12/2004 | 3964 | 2915 |
| 6/15/2004 | | 2493 |
| 6/15/2004 | 3720 | 2481 |

41. WVDEP also monitored Stillhouse Branch more recently and measured the following levels of conductivity and sulfate at the mouth of that stream, at 0.1 mile upstream from the mouth, and at the toe of the valley fill 0.5 mile upstream from the mouth:

| Date | Mile Point | Conductivity | Sulfate |
|---|---|---|---|
| 6/28/2011 | 0 | 3398 | 2070 |
| 9/6/2011 | 0 | 3428 | 2150 |
| 9/21/2011 | 0 | 3535 | 2550 |
| 10/27/2011 | 0 | 3270 | 2120 |
| 11/29/2011 | 0 | 2749 | 1720 |
| 1/10/2012 | 0 | 3150 | 2240 |
| 3/13/2012 | 0 | 2694 | 1690 |
| 4/3/2012 | 0 | 3374 | 2210 |
| 5/9/2012 | 0 | 2610 | 1590 |
| 6/20/2012 | 0 | 3505 | 2460 |
| 7/18/2012 | 0 | 3600 | 2530 |
| 9/21/2011 | 0.1 | 3525 | |
| 10/27/2011 | 0.1 | 3308 | |
| 11/3/2011 | 0.1 | 3270 | |
| 11/29/2011 | 0.1 | 2742 | |
| 12/13/2011 | 0.1 | 2740 | |
| 1/4/2012 | 0.1 | 3034 | |
| 10/13/2009 | 0.5 | 3736 | |

42. On August 5, 2003, WVDEP measured the West Virginia Stream Condition Index (WVSCI) score for Stillhouse Branch as 47. In 2008, WVDEP classified Stillhouse Branch as biologically impaired due to ionic stress. On May 9, 2012, WVDEP measured the WVSCI for that branch again and found it to have dropped to 31.6. WVDEP's August 12, 2010 "Justification and Background for Permitting Guidance for Surface Coal Mining Operations to Protect West Virginia's Narrative Water Quality Standards, 47 C.S.R. 2 §§ 3.2.e. and 3.2.i." (hereafter "WVDEP's Guidance"), states that "the current WVSCI score that indicates the integrity of a benthic macroinvertebrate community in West Virginia's wadeable streams is 68.0."

43. Stillhouse Branch is also contaminated by elevated levels of selenium. WVDEP sampling has measured the following amounts of selenium at the mouth of Stillhouse Branch:

| Date | Concentration (mg/L) |
|---|---|
| 9/21/2011 | 0.0011 |
| 10/27/2011 | 0.0019 |
| 11/29/2011 | 0.0082 |
| 1/10/2012 | 0.0056 |
| 3/13/2012 | 0.0087 |
| 4/3/2012 | 0.0051 |
| 5/9/2012 | 0.0053 |
| 6/20/2012 | 0.0028 |
| 7/18/2012 | 0.0038 |

44. Most of these amounts exceed West Virginia's chronic water quality standard for selenium, which is 0.005 mg/L.

45. On the basis of Fola's continuing violations of the water quality standards incorporated into its WV/NPDES Permit WV1014005 and the absence of any evidence of any meaningful efforts by Fola to eradicate the cause of the violations, Plaintiffs allege that Fola is in continuing and/or intermittent violation of the Clean Water Act and SMCRA.

## FIRST CLAIM FOR RELIEF

### (Clean Water Act Violations)

46. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 45 supra.

47. Since at least December 2008, Fola's Surface Mine No. 3 has discharged pollutants from its operations through point sources, i.e., Pond 40 and Outfall 29, into Twentymile Creek and its tributaries, including Stillhouse Branch, pursuant to WV/NPDES Permit WV1014005.

48. Twentymile Creek and its tributaries, including Stillhouse Branch, are waters of

the United States within the meaning of 33 U.S.C. § 1362(7).

49. Since at least December 2008, Fola has discharged, and continues to discharge, pollutants which cause ionic stress and biological impairment in Twentymile Creek and its tributaries, including Stillhouse Branch, in violation of West Virginia's narrative water quality standards for biological integrity and aquatic life protection.  47 C.S.R. §§ 2-3.2.e & 2-3.2.i.

50. Since at least September 2011, Fola has discharged, and continues to discharge selenium into Stillhouse Branch in violation of West Virginia's numeric, chronic water quality standard for selenium.

51. The narrative water quality standards for biological integrity and aquatic life protection and numeric water quality standard for selenium incorporated by reference into Part C of Fola's WV/NPDES Permit WV1014005 are "effluent standards or limitations" for purposes of Sections 505(a)(1) and 505(f)(6) of the Clean Water Act because they are a condition of a permit issued under section 402 of the Act.  33 U.S.C. §§ 1342, 1365(a)(1), 1365(f)(6).

52. Based on the WVSCI scores and measured concentrations of specific conductivity, sulfates, and selenium in Fola's discharges, and its failure to take corrective actions to address those conditions, Plaintiffs believe that Fola is in continuing and/or intermittent violation of its WV/NPDES Permit WV1014005 and the CWA.

53. Pursuant to Sections 309(d) and 505 of the CWA, 33 U.S.C. § 1319(d) and 1365, Fola is liable for civil penalties of up to $37,500 per day of violation for its violations of the effluent limitations in WV/NPDES Permit WV1014005.

54. Fola is subject to an injunction under the CWA ordering it to cease its permit violations.

## SECOND CLAIM FOR RELIEF

### (SMCRA Violations)

55. Plaintiffs incorporate by reference all allegations contained in paragraphs 1 through 54 supra.

56. Fola's WVSCMRA Permit S200995 requires it to comply with performance standards of the WVSCMRA. 38 C.S.R. § 2-3.33(c).

57. Those standards provide that "discharge from areas disturbed by surface mining shall not violate effluent limitations or cause a violation of applicable water quality standards." 38 C.S.R. § 2-14.5.b.

58. West Virginia water quality standards prohibit discharges of "[m]aterials in concentrations which are harmful, hazardous or toxic to man, animal or aquatic life" or that cause "significant adverse impacts to the chemical, physical, hydrologic, or biological components of aquatic ecosystems." 47 C.S.R. §§ 2-3.2.e & 2-3.2.i.

59. WVSCMRA performance standards also provide that "[a]ll surface mining and reclamation activities shall be conducted . . . to prevent material damage to the hydrologic balance outside the permit area." 38 C.S.R. § 2-14.5. "Material damage," at a minimum, includes violations of water quality standards.

60. By violating West Virginia water quality standards for biological integrity, aquatic life protection, and selenium at its Surface Mine No. 3, Fola has also violated, and is continuing to violate, the performance standards incorporated as conditions in its WVSCMRA Permit S200995.

61. Federal and State performance standards require that, "[i]f drainage control, restabilization and revegetation of disturbed areas, diversion of runoff, mulching, or other reclamation and remedial practices are not adequate to meet the requirements of this section and

§ 816.42, the operator shall use and maintain the necessary water-treatment facilities or water quality controls." 30 C.F.R. § 816.41(d)(1); see also 38 C.S.R. § 2-14.5.c ("Adequate facilities shall be installed, operated and maintained using the best technology currently available in accordance with the approved preplan to treat any water discharged from the permit area so that it complies with the requirements of subdivision 14.5.b of this subsection.").

62. The violations identified herein show that Fola's existing treatment methods are insufficient to meet that requirement. Thus, the performance standards require Fola to construct systems that will effectively treat its effluent to levels that comply with all applicable water quality standards.

63. Each violation of Fola's WVSCMRA permit is a violation of SMCRA and is enforceable under the citizen suit provision of SMCRA, 30 U.S.C. § 1270(a).

64. Fola is subject to an injunction under SMCRA ordering it to cease its permit violations.

**RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

1. Declaring that Fola has violated and is in continuing violation of the Clean Water Act and SMCRA;

2. Enjoining Fola from operating its facilities in such a manner as will result in further violations of the effluent limitations in WV/NPDES Permit WV1014005;

3. Ordering Fola to immediately comply with the effluent limitations in WV/NPDES Permit WV1014005;

4. Ordering Fola to immediately comply with the terms and conditions of WVSCMRA Permit Number S200995;

5. Ordering Fola to pay appropriate civil penalties up to $37,500 per day for each

CWA violation;

6. Ordering Fola to conduct monitoring and sampling to determine the environmental effects of its violations, to remedy and repair environmental contamination and/or degradation caused by its violations, and restore the environment to its prior uncontaminated condition;

7. Awarding Plaintiffs their attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action; and

8. Granting other such relief as the Court deems just and proper.

            Respectfully submitted,

            **/s/ DEREK O. TEANEY**
            DEREK O. TEANEY (W.Va. Bar No. 10223)
            JOSEPH M. LOVETT (W.Va. Bar No. 6926)
            Appalachian Center for the Economy and the
              Environment
            P.O. Box 507
            Lewisburg, WV 24901
            (304) 645-9006

            Counsel for Plaintiffs