IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

OHIO VALLEY ENVIRONMENTAL
COALITION, INC., et al.,

    Plaintiffs,

v.                                                                                          CASE NO. 2:13-cv-5006

FOLA COAL COMPANY, LLC,

    Defendant.

### DEFENDANT'S POST-TRIAL BRIEF ON ISSUES IDENTIFIED IN COURT'S OCTOBER 14, 2015 ORDER

This Court's post-trial Memorandum Opinion and Order of October 14, 2015 required Fola Coal Company, LLC, to submit a memorandum of law "addressing the authority and regulatory scheme under the CWA on which Defendant relies in arguing that water management strategies are in compliance with the Act and, if successful, can bring Defendant into compliance with narrative water quality standards." ECF No. 167, p. 10.

Nothing in the Clean Water Act prohibits the use of non-treatment techniques, such as the ones proposed by Defendant in this case, to meet water quality standards. *See Ford Motor Co. v. U.S. Envtl. Prot. Agency*, 567 F.2d 661, 665-66 & 671 (6th Cir. 1977) (holding that CWA and its implementing regulations did not prohibit mixing of treated effluent with water pumped from Lake Erie and stored in canal to meet water quality-based effluent limits). Indeed, the U.S. Environmental Protection Agency ("EPA") specifically authorizes the use of non-treatment techniques as a method of achieving water quality standards. *See* 40 C.F.R. § 125.3(f) (authorizing use of non-treatment techniques to meet water quality standards if such techniques are "the preferred environmental and economic method to achieve the standards"); 44 Fed. Reg.

32,854, 32,893 (June 7, 1979) ("'[N]on-treatment' techniques such as flow augmentation and in-stream mechanical aerators…may be used to achieve water quality standards[.]").

Historically, EPA itself has issued NPDES permits that specifically allow the use of non-treatment techniques to meet water quality-based effluent limits. *See, e.g., City of Tulsa, Oklahoma*, 1990 WL 339070, *1-2 (EPA EAB 1990) (upholding EPA Region VI's issuance of NPDES permit allowing sewage treatment facility to meet water quality-based effluent limits for biochemical oxygen demand and total suspended solids via artificial flow augmentation); *Champion Int'l Corp., Permittee*, 1992 WL 92371, *7, 11-13 (EPA ALJ 1992) (upholding EPA Region IV's issuance of NPDES permit allowing pulp and paper mill to meet water quality-based effluent limits for biological oxygen demand and dissolved oxygen via non-treatment method after mill rejected treatment alternatives based on evaluation of efficiency, reliability, space requirements, energy/resource requirements, environmental impacts, and cost).

Similarly, there is nothing in the West Virginia Water Pollution Control Act ("WPCA") or its implementing rules that prohibits the use of non-treatment techniques to meet water quality-based effluent limits. In fact, the WPCA specifically prohibits the West Virginia Department of Environmental Protection from adopting rules or water quality standards that "<u>specify the</u> design of equipment, type of construction or <u>particular method which a person shall use to reduce the discharge of a pollutant</u>[.]" W. Va. Code §§ 22-11-4(a)(16) & 22-11-7b(c) (emphasis added).

Consistent with these principles, this Court has approved the use of water management strategies in other litigation brought by Plaintiffs. In *Ohio Valley Envtl. Coal., Inc., et al. v. Independence Coal Co., Inc., et al.*, the parties proposed and this Court entered a consent decree in which Jacks Branch Coal Company agreed to "implement a water management plan, which

2

may include elements of pumping effluent to the Kanawha River or mine storage, or both" at six outlets where CWA violations were allegedly occurring. DE107, p. 17 ¶ 47 (Consent Decree, *Ohio Valley Envtl. Coal., Inc., et al. v. Independence Coal Co., Inc., et al.*, No. 3:10-cv-836 (S.D.W.Va. Jan. 24, 2012), ECF No. 134.). The consent decree stated that "[t]he Parties recognize, and the Court by entering this Consent Decree finds […] that this Decree is fair, reasonable and in the public interest." *Id*. at p. 2 ¶ 4. There, the parties acknowledged that the implementation of the water management plan would require the defendant to apply for and obtain new permits or permit modifications, and the Plaintiffs reserved their right to challenge those permits or permit modifications. *Id*. at p. 17 ¶ 47. Plaintiffs would retain that right here.[1]

---

[1] Plaintiffs may urge the Court to find that WVDEP could not grant a permit modification allowing a discharge of underdrain water into Twentymile Creek because it would cause a violation of water quality standards. There is absolutely no basis for such an argument, however. Fola's water management strategies will not increase the amount of conductivity in Twentymile Creek and, in certain phases, those water management strategies will result in decreases in the amount of conductivity in Twentymile. Moreover, the Court heard no evidence demonstrating that the contribution of conductivity from Stillhouse Branch—which makes up only a small fraction of the flow in Twentymile—is significant enough to cause or materially contribute to a violation of water quality standards in Twentymile. In a prior case, this Court properly refused to speculate about violations of water quality standards under such circumstances. *See Ohio Valley Envtl. Coal., Inc., et al. v. Fola Coal Co., LLC*, Memorandum Opinion and Order at 54-55, No. 2:13-cv-21588 (S.D.W.Va. Aug. 12, 2015), ECF No. 119 ("[T]he Court heard no expert testimony to suggest that the some 600,000 gallons per day coming from the three outlets at issue materially contributes to impairment observed downstream after the introduction of nearly four million additional gallons from sources unknown, but including at least twelve other discharge outlets—each of which is a potential source of ionic pollution. Without supporting scientific testimony, the Court cannot connect the discharges at issue to the area where Plaintiffs performed compliance sampling. Doing so would be little more than non-scientific speculation."). Plaintiffs, therefore, may challenge any subsequent permit decisions, but there is no basis for this Court to decide such issues now.

        Respectfully submitted,

        FOLA COAL COMPANY, LLC

        By counsel


        /s/ *Jennifer L. Hughes*
        ROBERT G. McLUSKY, WVBN 2489
        JENNIFER L. HUGHES, WVBN 9676
        M. SHANE HARVEY, WVBN 6604
        MATTHEW S. TYREE, WVBN 11160
        JACKSON KELLY PLLC
        500 Lee Street E, Suite 1600
        P.O. Box 553
        Charleston, WV 25322
        Phone: (304) 340-1000

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
HUNTINGTON DIVISION

**OHIO VALLEY ENVIRONMENTAL**
**COALITION, INC., et al.,**

    Plaintiffs,

v.                                                   CASE NO. 2:13-cv-5006

**FOLA COAL COMPANY, LLC,**

    Defendant.

### CERTIFICATE OF SERVICE

        I, Jennifer L. Hughes, do hereby certify that on October 21, 2015, I electronically filed the foregoing *Defendant's Post-Trial Brief on Issues Identified in Court's October 14, 2015 Order* with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

                                                  /s/ *Jennifer L. Hughes*
                                                  JENNIFER L. HUGHES, WVBN 9676
                                                  JACKSON KELLY PLLC
                                                  500 Lee Street E, Suite 1600
                                                  P.O. Box 553
                                                  Charleston, WV 25322
                                                  Phone: (304) 340-1000